**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PARTS.COM, LLC,<br><br>               Plaintiff,<br><br>vs.<br><br>GOOGLE INC.,<br><br>               Defendant. | CASE NO. 13-CV-1074 JLS (WMc)<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>(ECF No. 9) |

      Presently before the Court is Defendant Google Inc.'s ("Defendant," or "Google") Motion to Dismiss ("MTD") Plaintiff Parts.com, LLC's ("Plaintiff," or "Parts.com") Complaint. (ECF No. 9.) Also before the Court are Plaintiff's Response in Opposition to (ECF No. 11) and Defendant's Reply in Support of (ECF No. 12) the Motion. The hearing set for the Motion on September 26, 2013 was vacated, and the matter taken under submission on the papers without oral argument pursuant to Civil Local Rule 7.1.d.1. (ECF No. 13.) Having considered the parties' arguments and the law, the Court **GRANTS** Defendant's MTD and **DISMISSES** Plaintiff's Complaint.

**BACKGROUND**

      Plaintiff is an online retailer of automotive parts that has been in operation since January 2002. (Compl. ¶ 8, ECF No. 1.) Parts.com lists and sells automotive parts using the trademark "Parts.com." (*Id.*) The Parts.com mark was registered on September 16, 2008, to Intelligentz Corporation, which subsequently assigned the mark

to Parts.com on February 24, 2012.  (*Id.* ¶ 7.)  Parts.com describes itself as the "source of over 20 million automotive replacement parts, accessories, catalogues and related automotive materials and equipment for over 40 automobile manufacturers worldwide."  (*Id.*)

Defendant is an Internet search engine provider.  (*Id.* ¶ 9.)  As part of its business, Defendant sells "keyword triggers"—search terms that trigger the display of sponsored links—to businesses wishing to advertise on Defendant's search engine.  (*Id.* ¶ 11.)  Defendant displays these sponsored links alongside "organic results"—links that are a result of Defendant's search engine algorithm rather than the payment of an advertising premium.  (*Id.* ¶ 11.)

The search query "parts.com" on Defendant's search engine yields a lengthy list of results, many of which are unrelated to Plaintiff's website.  (*Id.*, Ex. B.)  In the section of the search results page labeled "Ads," two links are displayed with the heading "Parts.com," neither of which direct to Plaintiff's website.  (*Id.*, Ex. B.)

Plaintiff discovered Defendant's alleged use of its mark in or around 2007.  (*Id.* ¶ 27.)  On November 20, 2007, Plaintiff sent Defendant a cease-and-desist letter.  (*Id.*)  Defendant did not respond.  (*Id.*)  Plaintiff sent Defendant a subsequent e-mail on December 28, 2007.  (*Id.* ¶ 28.)  On January 2, 2008, Defendant responded, suggesting that Plaintiff register its mark.  (*Id.*)  Defendant purportedly "never ceased unauthorized use of the parts.com sponsored links."  (*Id.* ¶ 27.)  Plaintiff claims to have lost "at least $2 million per year" because of Defendant's alleged infringement.  (*Id.* ¶ 34.)

As a result, Plaintiff asserts the following six claims against Defendant: (1) federal trademark infringement, (2) federal false designation of origin and unfair competition, (3) state trademark infringement and unfair competition, (4) state unfair and deceptive trade practices, (5) federal trademark dilution, and (6) state trademark dilution and injury to business reputation.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the

defense that the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a motion to dismiss. The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible when the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557). Further, the Court need not accept as true "legal conclusions" contained in the complaint. *Id.* This review requires context-specific analysis involving the Court's "judicial experience and common sense." *Id.* at 679 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.*

Where a motion to dismiss is granted, "leave to amend should be granted 'unless

1 the court determines that the allegation of other facts consistent with the challenged
2 pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.*,
3 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well*
4 *Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)). In other words, where leave to
5 amend would be futile, the Court may deny leave to amend.

## DISCUSSION

Defendant presents two arguments in support of its MTD. First, Defendant contends that all six of Plaintiff's claims are barred by laches. Second, Defendant asserts that Plaintiff's state law claims are preempted by the Communications Decency Act. The Court addresses each of these arguments in turn.

**I.     Laches as an Affirmative Defense to Trademark Causes of Action**

"Laches is an equitable time limitation on a party's right to bring suit." *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835 (9th Cir. 2002) (quoting *Boone v. Mech. Specialties Co.*, 609 F.2d 956, 958 (9th Cir. 1979)) (internal quotation marks omitted). A defendant seeking to assert the defense of laches must prove that (1) the plaintiff unreasonably delayed in filing suit, and (2) the defendant was prejudiced as a result. *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 951 (9th Cir. 2001). Although laches is an equitable defense, it is "well established that laches is a valid defense to Lanham Act claims for both monetary damages and injunctive relief." *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 997 (9th Cir. 2006) (citations omitted). Laches can bar not only federal Lanham Act claims, but state law trademark and unfair competition claims as well. *See, e.g.*, *Jarrow*, 304 F.3d at 842–43.

*A.     Asserting Laches at the Dismissal Stage*

Plaintiff asserts that a laches defense is improper at the dismissal stage. (Resp. in Opp'n 8–9, ECF No. 11.) Although it is true that some courts will not grant dismissal or summary judgment on the basis of laches—*see e.g.*, *Country Floors, Inc. v. P'ship Composed of Gepner & Ford*, 930 F.2d 1056 (3d Cir. 1991) (summary judgment stage); *Carell v. Shubert Org., Inc.*, 104 F. Supp. 2d 236 (S.D.N.Y. 2000)

(dismissal stage)—the Ninth Circuit's position is not as clear. Although *Jarrow* certainly stands for the proposition that a grant of *summary judgment* on the basis of laches can be proper, it is less clear whether laches is also appropriate at the dismissal stage. 304 F.3d at 843.

Some courts within this Circuit have at least entertained, if not granted, dismissals premised on laches. *See, e.g.*, *Thermolife Int'l, LLC v. Gaspari Nutrition, Inc.*, 871 F. Supp. 2d 905, 909–11 (D. Ariz. 2012) (considering but denying dismissal on basis of laches due to lack of unreasonable delay); *Aristocrat Techs., Inc. v. High Impact Design & Entm't*, No. 2:07-CV-01033-BES-LRL, 2009 WL 1911464, at *3–4 (D. Nev. June 23, 2009) (considering but denying dismissal on basis of laches due to lack of prejudice from delay). At the same time, many opinions advise against applying laches at the dismissal stage. *See, e.g.*, *Couveau v. Am. Airlines, Inc.*, 218 F.3d 1078, 1083 (9th Cir. 2000); *Italia Marittima, S.P.A. v. Seaside Transp. Servs., LLC*, No. C 10-0803 PJH, 2010 WL 3504834, at *6 (N.D. Cal. Sept. 7, 2010). Accordingly, while this Court does not conclude that laches is improper *per se* on a motion to dismiss, the Court is mindful that laches generally "is ill-suited for a motion to dismiss for failure to state a claim." *Italia Marittima*, 2010 WL 3504834, at *6.

### B. The Presumption of Laches

Defendant argues that laches bars Plaintiff's Complaint in its entirety. (MTD 24, ECF No. 9-1.) "[I]f suit is filed outside of the analogous [statute of] limitations period, courts often have presumed that laches is applicable." *Jarrow*, 304 F.3d at 836 (citations omitted). Because the Lanham Act does not legislate a limitations period, the Ninth Circuit presumes that laches bars a claim when the plaintiff files the suit outside of the "analogous state limitations period." *Id.* at 836–37 (citations omitted). This limitations period starts running as soon as the plaintiff "knew or should have known about its potential cause of action." *Id.* at 838. Regardless of whether this presumption applies, courts still analyze the facts to determine whether there was an unreasonable delay and whether the defendant was prejudiced. *See id.* at 838–40.

The limitations period both for Plaintiff's California trademark infringement claim and trademark dilution claim is four years. *Miller*, 318 F. Supp. 2d at 942 & n.11 (citing Cal. Code. Civ. Proc. §§ 337, 343). That same limitations period applies to Plaintiff's federal trademark infringement and dilution claims. *See id.* The statute of limitations for Plaintiff's California unfair and deceptive trade practices claim is also four years. *See* Cal. Bus. & Prof. Code § 17208. Lastly, the court in *Jarrow* found that California's three-year limitations period for fraud applied to a federal false advertising claim brought pursuant to § 43(a)(1)(B) of the Lanham Act. *See Jarrow*, 304 F.3d at 838 (citations omitted); Cal. Civ. Proc. Code § 338(d). A federal false advertising claim is sufficiently analogous to a § 43(a)(1)(A) federal false designation of origin claim to justify applying the same three-year limitations period here. Accordingly, all of Plaintiff's claims are subject to either a three- or four-year statute of limitations.

Defendant argues that Plaintiff's limitations period began running in November 2007, when Defendant received Plaintiff's cease-and-desist letter. (Compl. ¶ 27, ECF No. 1; MTD 11, ECF No. 9-1.) Plaintiff impliedly counters that the limitations period stopped running when Defendant "stopped infringing shortly after January 2, 2008," only to resume infringement "after some waiting period." (Resp. in Opp'n 9, ECF No. 11.) As Defendant points out, however, Plaintiff fails to allege this "stop and restart" infringement strategy in the Complaint, and thus it is not properly raised here. *See Jappa v. California*, No. 08cv1813 WQH (PQR), 2009 WL 69312, at *3 (S.D. Cal. Jan. 8, 2009) (quoting *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (9th Cir. 1993)); *see also* Reply 6–7, ECF No. 12. Further, Plaintiff's Complaint actually alleges the opposite of a "stop and restart" theory, as Plaintiff states that it knew of Defendant's use of the Parts.com mark on November 20, 2007, and that Defendant "*never* ceased unauthorized use of the parts.com sponsored links." (Compl. ¶ 27, ECF No. 1 (emphasis added).) Accordingly, based on the facts alleged in the Complaint, the Court concludes that the limitations period for Plaintiff's claims began running on November 20, 2007. Plaintiff filed its Complaint on May 6, 2013. This

filing date marks more than five and one-half years after the date on which the limitations period began to run. Because all of the limitations periods for Plaintiff's various claims are at most four years, Plaintiff's delay activates the laches presumption. *See Jarrow*, 304 F.3d at 838.

Plaintiff, however, contends that Defendant's infringement is willful, rendering laches inapplicable. (Resp. in Opp'n 9–10, ECF No. 11.) Plaintiff argues that Defendant's infringement is willful because Defendant received notice that it was using Plaintiff's mark, briefly stopped its infringement, and then resumed using the Parts.com mark. (*Id.*) As already explained, however, this "stop and restart" theory is not alleged in the Complaint and accordingly cannot support a finding of willful infringement. But, even if this argument were properly before this Court, the mere fact that Defendant received a cease-and-desist letter and failed to stop its alleged infringement is not sufficient proof of willfulness. If this were the state of the law, even those who continued to use a mark in good faith after receiving a cease-and-desist letter would be precluded from asserting laches. Then defendants might be forced to halt certain business activities during litigation of infringement issues, potentially at great cost, even if the claims were without much merit. Such a position is untenable. Accordingly, the Court finds that Plaintiff's willful infringement argument does not preclude Defendant's laches defense.

### C. The **Jarrow** *Two-Prong Test*

Having determined that the presumption of laches applies, the Court now turns to whether (1) Plaintiff unreasonably delayed filing suit, and (2) Defendant suffered prejudice as a result. *Danjaq*, 263 F.3d at 951. These two elements operate on a sliding scale: if the delay is short, the amount of prejudice required is great, but if the delay is long, "prejudice is more likely to have occurred and less proof of prejudice will be required." *Miller*, 454 F.3d at 1000 (citation omitted).

*i.    Unreasonable Delay*

In evaluating the reasonableness of a markholder's delay in bringing suit, courts

examine the length of the delay beyond the limitations period and whether "plaintiff has proffered a legitimate excuse for its delay." *See Jarrow*, 304 F.3d at 838 (citing *Danjaq*, 263 F.3d at 954–55. Because the Court has found that the limitations periods applicable to Plaintiff's claims are at most four years, and because the Court has found that these statutes of limitations began running approximately five and one-half years ago, each of Plaintiff's claims is at least a year and one-half beyond its applicable limitations period. Plaintiff proffers its "stop and restart" theory as an excuse for this significant delay. (Resp. in Opp'n 9, ECF No. 11.) Again, however, this excuse is inapplicable because it is not alleged in the Complaint. In fact, because the Complaint alleges that Defendant "never ceased unauthorized use of the parts.com sponsored links," Plaintiff had a more than sufficient opportunity to file its claims within the limitations period. (Compl. ¶ 27, ECF No. 1.) Accordingly, the Court finds Plaintiff's delay to be unreasonable. *See Grupo Gigante S.A. de C.V. v. Dallo & Co., Inc.*, 391 F.3d 1088, 1102–03 (9th Cir. 2004) (finding a four-year delay in filing suit unreasonable).

ii.   *Prejudice*

The Ninth Circuit primarily recognizes two types of prejudice in the laches analysis: evidentiary and expectations-based. *Danjaq*, 263 F.3d at 955. Either kind of prejudice is sufficient to satisfy this requirement. *Id.* Despite the laches presumption, Defendant retains the burden of proving prejudice. *See, e.g.*, *Internet Specialties W., Inc. v. Milon-DiGiorgio Enters., Inc.*, 559 F.3d 985, 991 (9th Cir. 2009).

a.   <u>Evidentiary Prejudice</u>

Evidentiary prejudice encompasses concerns over "lost, stale, or degraded evidence, or witnesses whose memories have faded or who have died." *Danjaq*, 263 F.3d at 955 (citations omitted). Defendant argues that it will suffer evidentiary prejudice because (1) Plaintiff has already failed to produce a copy of the original, signed cease-and-desist letter; and (2) the dynamic nature of Defendant's sponsored-link displays means that a significant amount of information may no longer be

available. (MTD21–22, ECF No. 9-1.) Defendant also argues that, if the lawsuit were to proceed beyond this motion, the prohibitive difficulty of conducting consumer surveys regarding brand recognition at the time of the initial alleged infringement in 2007 would be prejudicial. (*Id.* at 22.)

If this were a motion for summary judgment rather than a motion to dismiss, the Court would find this argument compelling; however, this argument seems premature. It may be that either party would be able to produce a copy of the original, signed cease-and-desist letter if discovery proceeds. Similarly, it is hard to believe that Defendant—a top-tier Internet business whose very name has become synonymous with Internet searching—would not have detailed records about whether certain keywords were active or inactive during the relevant period of time.

The Court finds *ATM Express, Inc. v. ATM Express, Inc.*, cited by Defendant in support of its argument, distinguishable. No. 07cv1293-L(RBB), 2009 WL 2973034 (S.D. Cal. Sept. 11, 2009). *ATM Express* involved a motion for summary judgment, and thus there was a more developed evidentiary record. Moreover, *ATM Express* involved a delay approximately twice as long as the delay at issue here. *See id.* at *1, 9. Thus, a strong basis for concern over "lost, stale, or degraded evidence, or witnesses whose memories have faded or who have died" existed in *ATM Express*. *Danjaq*, 263 F.3d at 955 (citations omitted). It is hard to convince a court that one is prejudiced in this way, however, when the parties have hardly begun searching for evidence in the first place. Accordingly, at this time, the Court finds that Defendant has not satisfactorily proven evidentiary prejudice.

b. <u>Expectations-Based Prejudice</u>

Expectations-based prejudice exists if the defendant "took actions or suffered consequences that it would not have, had the plaintiff brought suit promptly." *Danjaq*, 263 F.3d at 955 (citations omitted). "A defendant may establish [such expectations-based] prejudice by showing that during the delay, it invested money to expand its business or entered into business transactions based on [its] presumed rights." *Miller*,

454 F.3d at 999–1000 (citations omitted).  Or, a defendant can establish this form of prejudice by showing that it may incur liability for damages as a result of entering into such business transactions during the delay.  *Id.* at 1000.

Defendant argues that Plaintiff's request for $2 million in damages per year of infringement, trebled for willfulness—a potential liability of approximately $36 million—establishes expectations-based prejudice, because Plaintiff's delay led Defendant to enter into allegedly infringing business transactions it would not have entered into had Plaintiff sued earlier, and because Defendant's potential liability increased the longer Plaintiff waited to bring suit. *(*MTD 23–24, ECF No. 9-1.)  The Court finds Defendant's argument persuasive.

Mere expenditures during a filing delay are insufficient to establish expectations-based prejudice.  *See, e.g.*, *Internet Specialties W.*, 559 F.3d at 991–92; *Miller*, 454 F.3d at 1000.  Increased potential liability resulting from a continuation of existing practices during that period, however, is sufficient.  *See RSP Corp. v. Int'l Bus. Machs. Corp.*, No. 5:08-cv-3414 RMW, 2012 WL 3277136, at * 15 (N.D. Cal. Aug. 9, 2012) (*citing Whittaker Corp. v. Execuair Corp.*, 736 F.2d 1341, 1347 (9th Cir. 1984); *ExperExchange, Inc. v. Doculex, Inc.*, No. 08-03875 JCS, 2009 WL 3837275 (N.D. Cal. Nov. 16, 2009)).

It is uncontested—and, indeed, the Complaint explicitly alleges—that Defendant continued to provide sponsored links that displayed, and were generated in response to, the Parts.com mark during Plaintiff's filing delay.  (Compl. ¶ 18, ECF No. 1.)  Had Plaintiff brought suit earlier, Defendant would not be vulnerable to an additional annual liability of $6 million.  If the damages Plaintiff sought were a lump sum, the calculus likely would be different.  But such is not the case.  Because Plaintiff seeks a figure that increases over time, it would be inequitable to reward Plaintiff for dragging its heels.  Accordingly, because Plaintiff's unreasonable delay has increased Defendant's potential liability, the Court finds that Defendant has experienced expectations-based prejudice as a result.

### D. *The* E-Systems *Factors*

In addition to *Jarrow*'s two-prong test, the Ninth Circuit has articulated six factors to be weighed in deciding whether to apply laches: (1) the strength and value of the trademark rights asserted; (2) the senior user's diligence in enforcing its mark; (3) the extent of any harm to the senior user if relief is denied; (4) any good faith ignorance on the part of the junior user; (5) whether the senior and junior users are competitors; and (6) the extent of any harm suffered by the junior user because of the senior user's delay. *E-Systems, Inc. v. Monitek, Inc.*, 720 F.2d 604, 607 (9th Cir. 1983).

The Ninth Circuit has not fully explained how the older *E-Systems* factors fit with *Jarrow*'s framework, although some courts have folded the two inquiries together. *See, e.g.*, *Saul Zaentz Co. v. Wozniak Travel, Inc.*, 627 F. Supp. 2d 1096, 1113–14 (N.D. Cal. 2008); *RSI Corp.*, 2012 WL 3277136, at *16. Because laches is an equitable defense, the Court believes this thorough approach, attempting to weigh the equities, is worthwhile. This Court has already discussed the second factor (Plaintiff's diligence) and the sixth factor (the extent of the harm suffered by Defendant). *See id.* at 1114. Accordingly, the four remaining *E-Systems* factors are discussed below.

*i.    First Factor: Strength and Value of the Trademark Rights Asserted*

Although both parties have spilled much ink debating whether Plaintiff's registered trademark is valid at all, the questions of strength and value are independent from that inquiry. *See Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1149–50 (9th Cir. 2011) (discussing "strength of mark" as factor in likelihood of confusion analysis without contesting validity of mark). The stronger the mark, the more this factor will favor the senior user. *See id.* at 1149 ("On balance, these considerations favor [defendant]. The [mark] is unquestionably valuable and strong, given [defendant's] rapid and continuing growth."); *E-Systems*, 720 F.2d at 607. Value is measured relative to the alleged infringer rather than the markholder. *Id.*

Although Plaintiff's mark may have acquired secondary meaning sufficient for registration, it is at most a descriptive mark, because Parts.com describes a website

where customers buy (car) parts.  *See Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1141–42 (9th Cir. 2002) (quoting *Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1047 n.8 (9th Cir. 1998)) (citation and internal quotation marks omitted) ("Descriptive marks define qualities or characteristics of a product in a straightforward way that requires no exercise of the imagination to be understood."). A descriptive mark "is inherently a weak mark." *Id.* at 1144 (internal quotation marks and citation omitted).  Moreover, Plaintiff's Complaint is devoid of any allegations concerning the value of the Parts.com mark to Defendant.  The Court assumes, however, that the mark's value to a multi-billion dollar company like Google is slight, as the income from any relevant keyword trigger sales is likely negligible. Accordingly, because the mark is weak and likely of low value, this factor favors Defendant.

ii.     *Third Factor: Harm to Parts.com if Relief is Denied*

Plaintiff claims that it "can demonstrate it has lost revenues from online sales of parts and accessories of at least $2 million per year."  (Compl. ¶ 34, ECF No. 1.) Although no exhibits support this figure, a court must assume, on a motion to dismiss, the truth of all plausible facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor.  *See Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005) (citation omitted).  Because Parts.com's business centers around the mark in question, the Court finds no reason to doubt this figure.  Thus, this factor favors Plaintiff.

iii.    *Fourth Factor: Google's Good-Faith Ignorance*

Although Defendant contests whether its use of the Parts.com mark is infringing, the Complaint lacks allegations concerning what Defendant knew about the mark and its ownership status prior to receiving Plaintiff's cease-and-desist letter.  There is no evidence concerning how long Defendant used the Parts.com mark prior to hearing from Plaintiff in 2007, or whether Defendant knew about Parts.com when it began selling related keyword triggers.  *See, e.g.*, *Grupo Gigante*, 391 F.3d at 1104.  And,

1 while Defendant allegedly continued using the mark after receiving Plaintiff's cease-
2 and-desist letters, the Court has already found that this alone does not evidence bad
3 faith. In light of the paucity of evidence as to this factor, the Court finds it to be neutral.

*iv.     Fifth Factor: Competition Between Parts.com and Google*

Defendant is an online search engine and provider of other-Internet related functionalities and services. Plaintiff, on the other hand, is an online retailer of automotive parts. While both parties primarily conduct their business in cyberspace, their deliverables overlap so tangentially that it cannot be said that the parties are competitors in any meaningful sense. Accordingly, this factor favors Defendant.

### E.     *Balancing of All Laches Considerations*

In sum, the Court has found that there is a presumption of laches, given that Plaintiff filed suit after all applicable statutes of limitations had run. The Court has also found that the *Jarrow* test favors applying laches, as Plaintiff unreasonably delayed in asserting its rights and that delay resulted in expectations-based prejudice to Defendant. Lastly, as to the *E-Systems* factors, the Court has found that the Parts.com mark is neither strong nor valuable and that the parties are not competitors. However, the Court has also found that Plaintiff likely will be harmed if the Court denies relief. The fourth factor, concerning good-faith ignorance, was neutral. Thus, when also taking into consideration the two factors comprising the *Jarrow* test, the *E-Systems* factors also support a laches defense. Despite the general hesitancy to apply laches at the dismissal stage, the presumption, the *Jarrow* test, and the *E-Systems* factors all suggest that Plaintiff's claims are barred by laches. Accordingly, the Court finds that laches applies and **GRANTS** Defendant's MTD as to the Complaint in its entirety.

### II.     **Communications Decency Act (CDA) Immunity**

The CDA provides a limited form of immunity to certain Internet related entities: "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). The CDA defines an "information content provider" as "any person

or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." *Id.* § 230(f)(3). The CDA defines an "interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server." *Id.* § 230(f)(2).

The Ninth Circuit has interpreted the CDA's immunity for interactive computer services broadly, holding that the CDA bars state law intellectual property claims. *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1118 (9th Cir. 2007); *see also Evans v. Hewlett-Packard Co.*, No. C 13-02477 WHA, 2013 WL 5594717, at *2 (N.D. Cal Oct. 10, 2013) (citing *Perfect 10*, 488 F.3d at 1118) ("Section 230 of the CDA bars state law claims against internet service providers based on content provided by a third party."); *Jurin*, 695 F. Supp. 2d at 1122 ("The CDA provides complete immunity to any provider or user of an interactive computer service from liability premised on information provided by another content provider."). Courts have held a wide array of state law claims to fall within the CDA's immunity if they "are predicated on the same conduct as [the] state law intellectual property claims: the conduct of the content providers." *Evans*, 2013 WL 5594717, at *2 (unfair competition, trademark law, right of publicity, emotional distress); *Jurin*, 695 F. Supp. 2d at 1122 (negligent and intentional interference with contractual relations, fraud, unjust enrichment).

Notably, in *Jurin* the Eastern District of California held that Defendant is an interactive computer service entitled to CDA immunity in addressing a similar challenge to Defendant's keyword advertising program. 695 F. Supp. 2d at 1122–23. Plaintiff argues that the dismissal stage is too early to apply CDA immunity, as facts may yet surface showing that Defendant provides advertisement content. (Resp. in Opp'n 17, ECF No. 11.) Plaintiff fails to note, however, that *Jurin*, too, was decided on a motion to dismiss. *See* 695 F. Supp. 2d at 1119, 1122–23.

The Court finds *Jurin* to be highly persuasive. Plaintiff's Complaint is devoid of allegations that Defendant in any way creates advertising content. Thus, the Court

finds that Defendant is instead an interactive computer service entitled to CDA immunity. Accordingly, Plaintiff's state law claims must fail, and the Court **GRANTS** Defendant's MTD with regard to Plaintiff's state law trademark infringement, unfair and deceptive trade practices, and trademark dilution claims. Further, because these claims are barred by the CDA, amendment would be futile, and therefore Plaintiff's state law claims are **DISMISSED WITH PREJUDICE**. *See Desoto*, 957 F.2d at 658.

## CONCLUSION

In light of the foregoing, the Court **GRANTS** Defendant's Motion to Dismiss in its entirety. Dismissal of claims 1, 2, and 5 is **WITHOUT PREJUDICE**. Because the laches determination was exceedingly close, and because the appropriateness of laches is such a fact-specific inquiry, it is possible that Plaintiff may be able to allege additional facts sufficient to plead plausible claims to rebut this finding. Dismissal of claims 3, 4, and 6, however, is **WITH PREJUDICE**.

If Plaintiff wishes, it **SHALL FILE** an amended complaint within fourteen days of the date on which this Order is electronically docketed. Failure to file an amended complaint by this date may result in dismissal of this case with prejudice.

**IT IS SO ORDERED**.

DATED: December 4, 2013

Janis L. Sammartino

Honorable Janis L. Sammartino
United States District Judge